UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES M. PRYOR,

               Petitioner,

v.                                CASE NO. 2:15-CV-13440
                                HONORABLE PAUL D. BORMAN

TONY TRIERWEILER,

               Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON
APPEAL**

**I. Introduction**

Michigan prisoner James M. Pryor ("Petitioner") has filed a petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is being held in

violation of his constitutional rights. Petitioner was convicted of assault with

intent to commit murder, Mich. Comp. Laws § 750.83, three counts of unlawful

imprisonment, Mich. Comp. Laws § 750.349b, two counts of felonious assault,

Mich. Comp. Laws § 750.82, and possession of a firearm during the commission of

a felony, Mich. Comp. Laws § 750.227b, following a jury trial in the Wayne

County Circuit Court. He was sentenced to 25 to 50 years imprisonment on the

assault with intent to commit murder conviction, concurrent terms of five to 15 years imprisonment on the unlawful imprisonment convictions, concurrent terms of two to four years imprisonment on the felonious assault convictions, and a consecutive term of two years imprisonment on the felony firearm conviction. In his pleadings, Petitioner raises claims concerning the conduct of the prosecutor, the effectiveness of trial counsel, and cumulative error. For the reasons that follow, the Court denies with prejudice the habeas petition. The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II. Facts and Procedural History

Petitioner's convictions arise from a shooting incident at a residence in Detroit, Michigan on January 29, 2012. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendant's convictions arose out of a shooting that occurred in the early morning hours at a home in the city of Detroit. Earlier in the evening, Marlon Raines attended a nightclub in Livonia. While there, he saw defendant and the two exchanged greetings and shook hands. Raines left the nightclub at around 1:40 a.m. and headed to his home in Detroit, where an acquaintance of his, Michael Baker, was staying. When Raines arrived home, he called Kateisha Mason over, and shortly after she arrived, they went to sleep in Raines's bedroom. Defendant and Albert Hughes arrived unannounced at Raines's home. Raines and Mason were asleep in Raines's bed when Baker came into the bedroom calling Raines's name. When Raines awoke, he saw defendant and Hughes standing at the doorway of his bedroom.

2

Hughes was holding a gun and defendant would not allow Baker or Raines to leave the bedroom. Raines and defendant began conversing about an incident involving Raines and Raines's brother. Raines pled with defendant and begged for his life. There was a knock at the front door, and defendant went to answer it while Hughes continued to hold Raines, Mason and Baker at gunpoint. When defendant returned, he told Hughes, "Come on man, we got to go. Do this nigger." Hughes then told Raines to sit on the bed and look the other way so that Raines would not see Hughes shoot him. Raines sat on the bed and defendant repeatedly told Hughes to "go on and do it." Hughes hesitated and defendant told him, "give me the gun I'll do it." Hughes then shot Raines in the back of the neck.

After being shot, Raines was able to get up and attack Hughes, and they tussled for the gun out into the hallway. When Raines and Hughes fell to the floor while wrestling for the gun, defendant and Baker both bolted for the front door. Raines was able to grab the gun while they were wrestling and fired three shots. The first shot struck his own wrist and the second two shots struck Hughes in the chest. After being shot in the chest twice, Hughes got up off the floor and ran towards the front door. Raines chased him and beat him in the back of the head with the pistol. Hughes fell into the corner of the living room up against the television and eventually died. Mason called the police and tended to Raines's wounds. The police eventually found defendant lying in the backseat of a car located approximately a mile away from the home.

*People v. Pryor*, No. 313118, 2014 WL 1118023, *1 (Mich. Ct. App. March 20, 2014) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising several claims, including those raised on habeas review. The court denied relief on those claims and affirmed his convictions. *Id.* at *2-11. Petitioner then filed an application for leave to appeal

with the Michigan Supreme Court, which was denied in a standard order. *People v. Pryor*, 497 Mich. 869, 853 N.W.2d 374 (2014).

Petitioner, through counsel, thereafter filed his federal habeas petition raising the following claims:

I.   His Fifth Amendment rights to a fair trial and due process of law were violated due to prosecutorial misconduct when the prosecutor improperly made multiple references before the jury of an alleged criminal incident involving the alleged rape by the victim's brother of Petitioner's daughter when the trial court had previously determined that the details of the incident (which Petitioner contends did not occur) were more prejudicial than probative and had ruled that any details were inadmissible.

II.  His Sixth Amendment rights to effective counsel were violated as trial counsel failed to ensure that the jury was properly sworn, failed to object to the prosecution's attempt to improperly shift the burden of proof, failed to sufficiently challenge the prosecution's theory of the case, and failed to request necessary jury instructions.

Respondent has filed an answer to the petition contending that it should be denied because the prosecutorial misconduct claims are barred by procedural default and all of the claims lack merit. Petitioner has filed a reply to that answer.

### III.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *Lindh v.*

*Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)

(quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a

6

prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not

require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, _ U.S. _ 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Lastly, habeas review is "limited to the record that was

before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Discussion

### A. Prosecutorial Misconduct Claims

Petitioner first asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by referring to an alleged sexual assault involving Marlon Raines's brother and Petitioner's daughter to show motive for the crime after the trial court had ruled that the details of the incident were inadmissible. Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by shifting the burden of proof during closing and rebuttal arguments. Respondent contends that these claims are barred by procedural default and that they lack merit.[1]

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*,

---

[1]Respondent also contends that the burden of proof claim is abandoned because Petitioner (through counsel) did not include it in his habeas petition. While Petitioner did not specifically raise the claim in his petition, he discusses it in his reply brief and the claim was exhausted in the state courts. The Court, therefore, shall address the claim.

431 F.3d 517, 524 (6th Cir. 2006); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last explained state court ruling is used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on the prosecutorial misconduct claims. In denying relief, the court relied upon the failure to object at trial. *Pryor*, 2014 WL 1118023 at *8. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130, 138 (1999); *People v. Stanaway,* 446 Mich. 643, 687, 521 N.W.2d 557, 579 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542,

557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied relief on these claims based upon a procedural default – the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated the ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

In this case, Petitioner alleges ineffectiveness of trial counsel as cause to excuse the failure to object at trial. Petitioner, however, cannot establish that trial counsel erred or that he was prejudiced by counsel's conduct so as to establish

cause, nor can he establish prejudice to excuse the default, because the underlying prosecutorial misconduct claims lack merit.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *see also Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard).

In this case, Petitioner fails to show that the prosecutor's conduct was improper, let alone unfair. Petitioner first asserts that the prosecutor improperly referenced an alleged sexual assault involving Marlon Raines's brother and Petitioner's daughter to show motive for the crime after the trial court had ruled that the details of the incident were inadmissible. On plain error review, the Michigan Court of Appeals determined that the prosecutor's references did not deny Petitioner a fair and impartial trial. The court explained in relevant part:

The prosecutor's questioning on cross-examination did not rise to the level of prosecutorial misconduct. The trial court ruled that the parties were not allowed to bring up the sexual assault charges themselves, but it permitted the prosecution to present evidence and question defendant regarding a prior altercation that gave rise to a "bad blood situation." During cross-examination of defendant, the prosecutor asked defendant if there had been any issues with Raines's brother in the last couple of years. Defendant responded multiple times that nothing serious had occurred. The prosecutor then asked defendant if anything had happened between Raines's brother and defendant's daughter that caused Raines's brother to be charged with a crime. Defendant once again responded that nothing had happened. Defendant eventually acknowledged that there had been an issue between his daughter and Raines's brother, but claimed "We had got over that."

Although the trial court ruled that the prosecution was not allowed to introduce evidence regarding the alleged sexual assault charges, when examining the entire record and evaluating the prosecutor's remarks in context, the prosecutor's questions did not rise to the level of prosecutorial misconduct. The prosecutor only asked specifically whether anything had happened between Raines's brother and defendant's daughter that caused Raines's brother to be charged with a crime. The prosecutor did not introduce any specific details regarding the incident, nor was the jury informed that the incident involved an alleged sexual assault. The prosecutor, in an attempt to explore the possibility that defendant had a motive, appeared to only mention criminal charges because defendant initially refused to acknowledge that there had been some issues involving Raines's brother and his daughter. Therefore, although the prosecutor slightly exceeded the limiting nature of the evidence, the prosecutor's questions did not affect defendant's substantial rights.

*Pryor*, 2014 WL 1118023 at *9.  The state court's decision is neither contrary to

Supreme Court precedent nor an unreasonable application of federal law or the

facts.[2]  The prosecutor's questions were relevant to challenge Petitioner's version of events and establish a motive for the shooting – particularly since trial counsel inquired into Petitioner's state of mind and intentions on the night of the shooting during direct examination.  *See, e.g.,* 9/7/12 Trial Tr., pp. 18-19, 26-27, 30-32.  A prosecutor does not commit misconduct by challenging a witness's credibility and asking relevant questions.  *Slagle v. Bagley*, 457 F.3d 501, 518 (6th Cir. 2006). Moreover, the prosecutor only asked about criminal charges after Petitioner denied that there was any serious "bad blood" between the parties and did not delve into the nature of the charges.  *See, e.g.,* 9/7/12 Trial Tr., pp. 36-39.  Such questioning can reasonably be seen as in keeping with the trial court's preliminary ruling on the matter.  *See* 6/4/12 Motion Hrg. Tr., pp. 4-7.  A prosecutor's good faith effort to admit evidence does not constitute misconduct, particularly where, as here, the trial court admits the evidence.  *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008).  Additionally, the Court notes that a prosecutor may argue from the facts that a defense witness, including a testifying defendant, is not worthy of belief.  *Portuondo v. Agard*, 529 U.S. 61, 69 (2000).  Petitioner fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair.

Petitioner also asserts that the prosecutor shifted the burden of proof during

---

[2]The Court notes that it would reach the same result applying a de novo standard of review.

14

closing and rebuttal arguments.  On plain error review, the Michigan Court of

Appeals denied relief on this claim.  The court explained in relevant part:

> Defendant also contends that the prosecutor's statements in closing
> and rebuttal arguments improperly shifted the burden of proof from
> the prosecution to the defense. As discussed previously, the
> prosecutor's comments did not improperly shift the burden of proof.
> Moreover, after the prosecutor made these statements, the trial court
> subsequently instructed the jury that the prosecution was required to
> prove each element of the eight charged offenses beyond a reasonable
> doubt. Because this Court presumes that a jury follows its
> instructions, any error did not deny defendant the right to a fair trial.

*Pryor*, 2014 WL 1118023 at *9.  In addressing the issue in the context of

Petitioner's ineffective assistance of trial counsel claims, the court further

explained:

> Here, the prosecutor's comments during closing arguments did not
> shift the burden of proof. In his closing argument, with respect to the
> encouragement and assistance defendant provided to Hughes, the
> prosecutor stated:
>
>> Is that encouragement? Is that aiding? Is that assisting,
>> in a crime that we know happened? How do we know
>> that? Because none of it was questioned. Nobody took
>> the stand. Nobody denied the fact that Mr. Pryor told
>> Mr. Hughes to shoot Mr. Raines.
>
> Despite defendant's contention that these comments shifted the
> burden of proof onto the defense, he fails to acknowledge the
> statement made by the prosecutor directly after the above comment.
> After stating that nobody took the stand to deny the fact that
> defendant told Hughes to shoot Raines, the prosecution explained:
>
>> The Judge is going to give you additional instructions.
>> And they are going to be well laid out as to what our

> burden has been from the very beginning. To prove each
> of the eight counts, each of the elements through
> evidence, which can be physical. A lot of this stuff and
> testimonial.

Clearly, the prosecutor reaffirmed that the burden remained on the prosecution to prove each of the elements to the eight counts. Moreover, even absent the statement that the burden remained on the prosecution, the prosecutor's comments on defendant's failure to produce corroborating witnesses did not shift the burden of proof. *Fields*, 450 Mich. at 115. Once defendant took the stand and advanced the theory that he did not contribute in the commission of crime, the prosecution was then permitted to comment on defendant's failure to produce a corroborating witness.

The prosecutor's comments during rebuttal arguments also did not shift the burden of proof. The prosecutor, in his rebuttal, stated:

> And you know what? We told you in the beginning, this
> is the final point. We told you in the beginning that Mr.
> Pryor is presumed innocent. We told you that he does
> not, absolutely has no duty to take the stand and testify.
> No question about that. But once he took the stand and
> testified, did you hear from his uncle? Did you? Because
> I didn't. Did you hear from the other person.

Despite defendant's contention that his trial counsel was ineffective for failing to properly object to this comment, this comment itself did not shift the burden of proof to the defense. Because defendant took the stand and advanced the theory that he had no knowledge that Hughes would shoot Raines and he ran to his uncle's house after he heard gun shots, the prosecutor was permitted to comment on defendant's failure to produce corroborating witnesses to prove this theory. *Fields*, 450 Mich. at 115. Therefore, the prosecutor did not shift the burden of proof and trial counsel was not ineffective for failing to object to any of the challenged statements in the prosecutor's closing and rebuttal arguments. Moreover, even assuming some of the prosecutor's comments were improper, any prejudicial effect was cured by the trial court's instruction regarding

the burden of roof, and, therefore, reversal is unwarranted.

*Id.* at \*5-6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[3]  It is well-settled that a prosecutor may not shift the burden of proof to the defendant, *Patterson v. New York*, 432 U.S. 197, 215 (1977), or imply that the defendant is required to provide evidence to prove his or her innocence.  *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006).  In this case, however, the prosecutor did not improperly shift the burden of proof during closing or rebuttal arguments.  Rather, the prosecutor argued from the evidence presented at trial, or lack thereof, that the defense was not worthy of belief.  "[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence."  *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).  Prosecutors can also point out the lack of evidence supporting the defense theory.  *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).  The prosecutor did not shift the burden of proof to the defense.  To be sure, the prosecutor acknowledged that it was the State's burden to prove the elements of the charged crimes beyond a reasonable doubt.

Moreover, even if the prosecutor erred in some fashion, Petitioner cannot

---

[3]The Court notes that it would reach the same result under a de novo standard of review.

establish that he was prejudiced and denied a fair trial. The trial court properly instructed the jury about the elements of the offenses, the presumption of innocence, and the burden of proof. The court also explained that the attorneys' arguments are not evidence and told the jury that if an attorney said something contrary to the court's instructions the jury must follow the instructions. *See* 9/7/12 Trial Tr., pp. 97-99, 107-14. Jurors are presumed to follow a court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it."). Petitioner fails to establish that the prosecutor erred and/or that any alleged improper conduct rendered his trial fundamentally unfair.

Lastly, Petitioner fails to demonstrate that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner makes no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant

habeas relief.

## B. Ineffective Assistance of Trial Counsel Claims

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to ensure that the jury was properly sworn, failing to object to the alleged instances of prosecutorial misconduct, failing to sufficiently challenge the prosecutor's theory of the case, and failing to request/object to certain jury instructions. Petitioner further asserts that he is entitled to habeas relief based upon the cumulative effect of trial counsel's alleged ineffectiveness. Respondent contends that these claims lack merit.[4]

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish

---

[4]Respondent also contends that some of these claims are abandoned because Petitioner (through counsel) did not argue them in his habeas petition. While Petitioner did not specifically argue some of the claims, he raised them in his petition, *see* Pet., p. 5, argued them in his reply brief, and exhausted the claims in the state courts. The Court, therefore, shall address the claims.

that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is

quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Petitioner first asserts that trial counsel was ineffective for failing to object to an improper jury oath. The Michigan Court of Appeals denied relief on this claim finding that the jury oath was proper under Michigan law such that any objection would have been meritless and concluding that counsel was not ineffective for failing to make a futile objection. *See Pryor*, 2014 WL 1118023 at *2-3, 4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the state court's ruling that the underlying oath claim lacks merit, Petitioner cannot establish that trial counsel erred or that he was prejudiced by counsel's conduct. The state court's ruling that the oath was proper under Michigan law is controlling on habeas review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the

challenged conviction, binds a federal court on habeas review"). Counsel cannot be deemed deficient for failing to make a meritless argument or a futile objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Petitioner thus fails to demonstrate that trial counsel was ineffective.

Petitioner also asserts that trial counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct. The Michigan Court of Appeals denied relief on this claim finding that the prosecutor's conduct was proper and/or that any prejudicial effect was cured by the trial court's jury instructions such that any objections would have been meritless and that counsel was not ineffective for failing to make futile objections. *See Pryor*, 2014 WL 1118023 at *5-6, 8-9.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[5] Given the state court's ruling and this Court's determination that the underlying prosecutorial misconduct claims lack merit, Petitioner cannot establish that trial counsel erred

---

[5]To the extent that the Michigan Court of Appeals did not separately address counsel's effectiveness with respect to the prosecutor's cross-examination of Petitioner, the Court's review of that ineffectiveness issue would be de novo. The Court reaches the same result under such a standard.

and/or that he was prejudiced by counsel's conduct. As discussed, counsel cannot be deemed deficient for failing to make a meritless argument or a futile objection. *Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225. Petitioner fails to establish that trial counsel was ineffective.

Petitioner also asserts that trial counsel was ineffective for failing to sufficiently challenge the prosecutor's theory of the case. The Michigan Court of Appeals denied relief on this claim finding that counsel's conduct was reasonable trial strategy and/or that Petitioner failed to show that he was prejudiced by counsel's conduct. The court explained in relevant part:

> Defendant claims that trial counsel did not adequately develop the testimony concerning the close range firing of the gun, which could have discredited Raines's version of the events. However, a review of the record suggests that trial counsel elicited testimony from Dr. Derstine that no gunpowder or stripling was found around Hughes's gunshot wounds, which is not consistent with the close range firing of a gun. Moreover, trial counsel, in closing, asserted that Hughes had no defensive wounds that indicated there had been a fight, and stated: "Now there is nothing in there about a post-range gunshot wound. If you're in the arms with somebody and tussling, then the gunpowder is going to be on your body or near the wound. Nothing about that." Therefore, the record suggests that trial counsel did attempt to discredit Raines's testimony by pointing out that the evidence does not suggest that Hughes was shot from close range. Consequently, trial counsel's performance did not fall below an objective standard of reasonableness, and defendant has failed to show that he was prejudiced by trial counsel's failure to further develop the testimony concerning the close range firing of the gun. *Toma*, 462 Mich. at 302–303.

Defendant also asserts that his trial counsel was ineffective because

he made no attempt to inquire into why Hughes was found by the police with a phone answering machine on his head. The mere speculation that this line of questioning would have somehow discredited the credibility of Raines is not sufficient to show that trial counsel's performance fell below an objective standard of reasonableness, nor is it sufficient to show that there is a reasonable probability that it would have changed the outcome of the trial. *Id.*

Defendant also argues that trial counsel should have inquired into why the gun recovered by the police had five rounds spent when Raines testified that there were only four rounds fired. Although Officer Dyas testified that the .32 caliber gun had five spent casings inside the chamber, the parties stipulated that only four bullets were recovered, two from inside the home and two from Hughes's body, which is consistent with Raines's version of the events. Simply because the gun recovered had five spent casings inside the chamber, did not automatically create the inference that all five rounds were fired inside the home, and it appears that the quantity of bullets recovered by the police coincided with Raines's testimony. In effect, any attempt to discredit Raines's version of the events with respect to the amount of shots fired would have been fruitless, and trial counsel's failure to inquire into this minor detail did not render his performance deficient, or prejudice defendant. *Id.*

Lastly, defendant argues that trial counsel should have inquired into the fact that Raines referred to the gun as a .38 caliber when, in fact, it was a .32 caliber gun. Despite this contention, defendant fails to show why discrediting Raines on this minor point would have been outcome determinative. The weapon used in the shooting was not in dispute and trial counsel's failure to point out this slight inconsistency did not render his performance deficient, or prejudice defendant.

*Pryor*, 2014 WL 1118023 at *6-7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. It is well-settled that defense counsel must conduct a reasonable investigation into the facts of a

defendant's case, or make a reasonable determination that such investigation is

unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v*

*Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251,

258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate

all witnesses who may have information concerning . . . guilt or innocence."

*Towns*, 395 F.3d at 258. That being said, decisions as to what evidence to present

and whether to call certain witnesses are presumed to be matters of trial strategy.

When making strategic decisions, counsel's conduct must be reasonable. *Roe v.*

*Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23.

The failure to call witnesses or present other evidence constitutes ineffective

assistance of counsel only when it deprives a defendant of a substantial defense.

*Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*,

303 F.3d 720, 749 (6th Cir. 2002). Furthermore, "courts generally entrust

cross-examination techniques, like other matters of trial strategy, to the

professional discretion of counsel." *Millender v. Adams*, 187 F. Supp. 2d 852,

870 (E.D. Mich. 2002). Impeachment strategy is a matter of trial tactics and such

decision-making is not ineffective "simply because in retrospect better tactics may

have been available." *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997);

*see also Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002).

    In this case, the record reveals that trial counsel sufficiently challenged the

prosecution's theory of the case, including Marlon Raines's credibility and his version of events. For example, counsel elicited testimony from Dr. Derstine that Hughes did not have gunpowder or stripling around his gunshot wounds and argued that Hughes did not have defensive wounds, both of which potentially discredited Raines's testimony that Hughes was shot at close-range. Such actions were reasonable trial strategy. Counsel may have reasonably decided not to discuss the answering machine on Hughes's head because such information was not relevant to the shooting or to Raines's credibility. Counsel may have reasonably chosen not to inquire into the fact that the revolver had five spent rounds when Raines testified that four shots were fired because only four bullets were recovered from the scene and the victim, the fifth bullet could have been fired anytime before the incident due to the nature of a revolver, and the number of shots fired was not germane to the defense. Similarly, counsel may have reasonably decided not to challenge Raines's references to the revolver as a .38 caliber when it was a .32 caliber because the revolver was recovered from the scene and the parties did not dispute that it was the gun used in the shooting. In sum, counsel's conduct in challenging the prosecution's theory of the case was reasonable. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as

the decisions of a defendant's trial counsel were reasonable, even if mistaken").

While Petitioner asserts that trial counsel should have presented expert testimony or further inquired into the facts, he fails to identify any such expert or to offer any evidence or testimony which would have benefitted the defense or otherwise affected the outcome at trial.  It is well-settled that conclusory allegations, without evidentiary support, are insufficient to justify habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings).  Petitioner fails to establish that trial counsel was ineffective.

Petitioner also asserts that trial counsel was ineffective for failing to request jury instructions, such as the missing witness instruction (CJI2d 5.12) based upon Michael Baker's failure to appear at trial and the jury questions instruction (CJI2d 2.9) which would have allowed the jury to question witnesses.  The Michigan Court of Appeals denied relief on this claim.  As to the missing witness instruction, the court ruled that the instruction was not required because the prosecution exercised due diligence in attempting to produce Michael Baker at

trial and that even if the prosecution did not exercise due diligence, Petitioner failed to show prejudice because the prosecution presented eyewitness testimony from Marlon Raines and Kateisha Mason that Petitioner committed the crime. The court concluded that counsel was not ineffective. *Pryor*, 2014 WL 1118023 at *4. As to the jury questions instruction, the court confirmed that the state law practice of allowing jurors to question witnesses was within the sound discretion of the trial court, that there was nothing in the record to suggest that the trial court ruled that under no circumstances might a juror ask questions, that counsel's decision not to request such an instruction was presumed sound trial strategy, and that Petitioner failed to show that he was prejudiced. *Id.* at *7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the state court's ruling that neither jury instruction was warranted under state law, Petitioner cannot establish that trial counsel erred and/or that he was prejudice by counsel's conduct. The state court's ruling on the applicability of jury instructions under Michigan law is controlling on habeas review. *See Bradshaw, supra*, 546 U.S. at 76. Counsel cannot be deemed deficient for failing to make a meritless argument or a futile objection. *Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225. Petitioner fails to establish that trial counsel was ineffective.

Petitioner also asserts that trial counsel was ineffective for failing to object

to the trial court's refusal to allow the jurors to take notes, which is permissible under state law. The Michigan Court of Appeals did not specifically address this issue. Consequently, the Court's review of the issue is de novo. Having conducted such review, the Court finds that Petitioner fails to establish that trial counsel erred. Counsel may have reasonably determined that an objection was not warranted because the matter of jury note-taking is left to the sound discretion of the trial court, *see* Mich. Ct. R. 2.513(H) (the court "may permit the jurors to take notes"); *see also* CJI2d 2.17 (note-taking allowed); CJI2d 2.18 (note-taking not allowed),[6] and/or believed that note-taking would distract the jurors from the evidence and testimony presented at trial. Moreover, Petitioner fails to allege or establish that he was prejudiced by counsel's conduct. As discussed, conclusory allegations are insufficient to warrant habeas relief. *Cross*, 238 F. App'x at 39-40; *Prince*, 78 F. App'x at 442; *Workman*, 178 F.3d at 771; *see also Washington*, 455 F.3d at 733. Petitioner fails to show that trial counsel was ineffective.

Lastly, Petitioner asserts that he is entitled to habeas relief based upon the cumulative effect of the alleged errors by trial counsel. The Michigan Court of Appeals denied relief on this claim finding that there were no errors by trial counsel so as to warrant relief based upon a theory of cumulative effect. *Pryor*, 2014 WL 1118023 at *8.

---

[6]The trial court gave this instruction. 9/5/12 Trial Tr., pp. 58-59.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Furthermore, the Sixth Circuit has ruled that such a cumulative error claim is not cognizable on habeas review. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *see also Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012) (ruling that trial counsel cumulative error claim was not cognizable and citing *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010), and *Moore*). Petitioner thus fails to state a claim upon which relief may be granted as to this issue. Moreover, given that none of his ineffective assistance of counsel claims have merit, he cannot establish that he is entitled to relief based upon cumulative error. In sum, Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

## V. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural rulings. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court **DENIES** Petitioner leave to proceed in forma pauperis on

appeal as an appeal cannot be taken in good faith.  *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED**.


s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated:  January 30, 2018


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 30, 2018.

s/Deborah Tofil
Case Manager